UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 14-61511-CIV-ROSENBERG/BRANNON

HADI "MAX" FALAHATI, SHARON FALAHATI,
MILLENNIUM AIR XPRESS AND
EXEC CHARTER, INC. D/B/A EXECJET CHARTER, INC.

  Plaintiffs,

v.

TRACEY EGAN, FRANZ JURAN &
SERGIO LOPEZ, individuals,

  Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS

  Individual Defendants Tracey Egan, Franz Juran, and Segio Lopez move to dismiss the Amended Complaint against them on two grounds: pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) because they have qualified immunity shielding them from this lawsuit and Plaintiffs fail to state a claim.

  First, the court should dismiss the case because it lacks subject matter jurisdiction to hear it. In this lawsuit, plaintiffs challenge the Federal Aviation Administration's (FAA) decision that ExecJet's aircraft was not airworthy and that ExecJet was in violation of FAA operational and administrative requirements, ultimately leading to revocation of ExecJet's FAA air carrier certification. The Federal Aviation Act (the Act) gives federal appellate courts exclusive jurisdiction to review these types of FAA decisions.  Indeed, the issues set forth in this lawsuit are currently pending before the Ninth Circuit Court of Appeals.  Accordingly, this court lacks subject matter jurisdiction here and should dismiss the case pursuant to Rule 12(b)(1).

Second, the court should dismiss the case because Defendants are entitled to qualified immunity against this lawsuit. Defendants are FAA employees. Because the suit challenges the decisions that they made within the course and scope of their federal employment, Defendants have qualified immunity. Plaintiffs fail to state a claim that any Defendant violated a clearly established constitutional right. Therefore, Plaintiffs fail to overcome Defendants qualified immunity and the court should dismiss the case pursuant to Rule 12(b)(6).

## BACKGROUND[1]

Plaintiff ExecJet is the former holder of an air carrier certificate issued by the Federal Aviation Administration (FAA) under Title 14, Part 135 of the Code of Federal Regulations. *See* Am. Compl.,generally*; see also* Exhibits A-E. This case arises out of the FAA's surveillance, inspection and enforcement activity with respect to ExecJet. *See* Am. Compl., generally*; see also* Exhibits A-E. Like all 135 air carriers, ExecJet was subject to regulatory oversight by an

---

[1] The facts recited and relied upon in this Motion come from both the pleadings and the attached exhibits. The United States brings this Motion, in part, as a motion to dismiss for lack of subject matter jurisdiction. When challenging subject matter jurisdiction, the Court may look to evidence outside the four corners of the complaint in deciding a 12(b)(1) motion to dismiss. *See e.g., McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). In addition, the court may also take judicial notice of these facts that are set out in the National Transportation Safety Board's order, NTSB Order No. EA-5714, 2014 WL 1746088 (April 22, 2014). , at *1.decision at

Moreover, the attachments are letters and other FAA communications that Plaintiffs refer to (and therefore incorporate by reference) into the Amended Complaint. And, these FAA communications are central to the Amended Complaint. The court may therefore consider them in deciding both the 12(b)(1) and 12(b)(6) motions, without converting them into summary judgment motions. *See Day v. Taylor,* 400 F.3d 1272, 1275-76 (11th Cir. 2005) (consideration of contract attached to motion to dismiss that was central to claims did not convert motion into one for summary judgment); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2004) (holding that court may consider document attached to motion to dismiss without converting it into a motion for summary judgment where document is central to plaintiff's claim and authenticity of document cannot be disputed); *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir.2004) (in analyzing motion to dismiss, court may rely on documents central to or referenced in complaint and matters judicially noticed).

FAA Certificate Management Team (CMT), which is made up of FAA Aviation Inspectors.  *See* Am. Compl. ¶13.  The inspectors involved in this matter worked out of the South Florida Flight Standards District Office (FSDO). *See* Am. Compl. ¶¶13-18; *see also* Exhibits A-E.

Individual Federal Defendant Tracey Egan is an FAA Inspector who works out of the South Florida FSDO.  *See* Am. Compl.*, ¶5.* On July 6, 2011, Defendant Egan, along with other members of ExecJet's Certificate Management Team, conducted a routine annual inspection of ExecJet's operations.  This included an inspection of ExecJet's only aircraft: a Learjet 35. *See* Am. Compl. ¶¶16, 24. Egan was the Principal Maintenance Inspector on that assignment. *See* Am. Compl. ¶¶5, 25.  Michael Katzmann was ExecJet's Director of Maintenance in July 2011. Katzman accompanied Defendant Egan on this inspection.  *See* Am. Compl. ¶¶27-28*;* Exhibits A-B.

During the inspection, Egan discovered a number of maintenance discrepancies that rendered the aircraft "unairworthy." Of the roughly thirty discrepancies noted, her inspection revealed a quarter-inch sized hole in the main cabin door's pressurization seal and improper rivets securing two passenger windows, both of which could seriously jeopardize the safety of flight.  Egan discussed the findings with Mr. Katzmann during the inspection and memorialized them in a letter.  *See* Exhibit A.  ExecJet was required to address each of the items before the aircraft would be considered airworthy, a necessary predicate to legal flight operations.  *See* 14 C.F.R. § 91.7(a) ("No person may operate a civil aircraft unless it is in an airworthy condition."). Because of the deficiencies, Falahati was not able to conduct his flight check ride. *See* Am. Compl.*, ¶35.*

In a separate letter to Katzmann, Defendant Egan informed ExecJet that her inspection also uncovered problems with the installation and documentation of a medical stretcher in the

3

aircraft. *See* Exhibit B (July 8, 2011 letter). The letter informed ExecJet that its Operating Specifications, an FAA-issued document authorizing certain types of commercial operations, would be amended to remove "air ambulance operations" if the defect was not cured within thirty days. *Id.* In that letter, Defendant Egan also notified ExecJet that there was administrative reconsideration process available to the company. *Id.*

Defendant Egan, joined at times by her Front Line Manager, Defendant Juran, met futilely with Plaintiff Falahati on several occasions to explain the discrepancies, including those relating to the window rivets and medical stretcher. Egan and Juran coordinated both issues with LifePort, the manufacturer of the medical stretcher, and Bombardier, the manufacturer of the Learjet aircraft. *See* Exhibit C (September 27, 2011 letter). By September 27, 2011, both issues remained outstanding. *Id.*

Defendant Egan gave Plaintiffs the option of submitting to a re-inspection of the aircraft under the authority of 49 U.S.C. § 44709(a), or of forgoing a re-inspection and requiring the FAA to commence proceedings to formally suspend the airworthiness certificate of the aircraft. *See* Exhibit C. Plaintiffs chose the former: re-inspection.

The FAA later learned that in the interim, ExecJet had lost its Director of Maintenance and that its insurance coverage on the aircraft had lapsed on November 15, 2011. Having both is required by the FAA. *See* Exhibits D and E. Moreover, the FAA learned that ExecJet lost operational control over the aircraft as a result of a bank repossession. *See* Am. Compl., ¶40; Exhibits D and E.

The holder of an air carrier certificate is required to have a Director of Maintenance, *see* 14 C.F.R. § 119.69(a)(3), the exclusive use of at least one aircraft, *see* 14 C.F.R. § 135.25(b), and appropriate economic authority from the Department of Transportation (which was revoked

4

when the lapse of insurance was discovered), *see* 14 C.F.R. § 119.5(i).  Because these criteria were not met, the FAA ultimately initiated proceedings to revoke Plaintiffs' air carrier certificate.  *See* Exhibit D.  Again, rather than require the FAA to immediately issue an order appealable to the National Transportation Safety Board (NTSB), *see* 49 U.S.C. 44709(d), Plaintiffs elected to pursue an informal conference with the Office of the Regional Counsel for the Western Pacific Region.  *See* Exhibit E.

On September 13, 2012, after several months of discussion without indication that Plaintiffs intended to bring their operation into compliance with the foregoing provisions, the FAA issued an order revoking Plaintiffs' air carrier certificate.  *Id.*  Plaintiffs appealed the order to an NTSB Administrative Law Judge, which found in favor of the FAA.[2]  NTSB Order No. EA-5714, 2014 WL 1746088, at *1.  The decision of the Administrative Law Judge was affirmed by the full Board of the NTSB.  *Id.*  (Decisions attached as Exhibit F)  Both tribunals found "no merit in the allegations of bad faith or arbitrary or capricious actions by the FAA," *id.* at *7, or denial of due process, *id.* at *14.  Plaintiffs have appealed the NTSB's order to the U.S. Court of Appeals for the Ninth Circuit, where it remains pending. *See ExecJet Charter, Inc. v. Huerta*, No. 14-71735 (9th Cir. filed June 20, 2014).  *See* Notice of Appeal attached as Exhibit G).

## LEGAL ARGUMENT

In this action, Plaintiffs bring an improper and unfounded collateral attack against three employees of the FAA.  Plaintiffs accuse them of violating the constitution by doing their jobs and seeks money damages against them personally, pursuant to *Bivens v. Six Unknown Named*

---

[2]     As to certificate revocation decisions, the Federal Aviation Act allows for an administrative appeal to the National Transportation Safety Board.  Then, if unsatisfied with the NTSB decision, the Act provides for judicial appeal in a federal Circuit Court of Appeals.  Again, federal appellate courts have exclusive judicial jurisdiction over these matters. *See* 49 USC §44709.

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights). The Federal Aviation Act gives exclusive jurisdiction to the Federal Courts of Appeals to review orders of the FAA. This court therefore lacks subject matter jurisdiction over this case and should dismiss it pursuant to Rule 12(b)(1).

Second, even if there were some basis for suing the defendants in their individual capacities (which there is not), the defendants, who were simply carrying out their job duties of ensuring that airplane carriers operate safely, have qualified immunity shielding them from this lawsuit. Plaintiffs fail to state a claim to overcome that immunity and the court therefore should dismiss the case on this additional basis pursuant to Rule 12(b)(6).

### A.      The Courts of Appeals Have Exclusive Jurisdiction Over Plaintiffs' Claims

The Federal Aviation Act "charges the FAA with prescribing air safety standards, including certification requirements for (among others) airports, airlines, airplanes, and aircraft pilots and mechanics to 'promote the safe flight of civil aircraft in air commerce.'" *Doe v. Fed. Aviation Admin.*, 432 F.3d 1259, 1262 (11th Cir. 2005) (quoting 49 U.S.C. § 44701(a)). A person aggrieved by an order of the Federal Aviation Administrator discharging these responsibilities may seek judicial review exclusively in the appropriate Court of Appeals of the United States. The Federal Aviation Act specifically states that:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or . . . the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. §46110; *see also Green v. Brantley*, 981 F.2d 514, 519–21 (11th Cir. 1993).

6

The Eleventh Circuit has repeatedly held that Congress' provision of "an exclusive forum for the correction of procedural and substantive errors" precludes a plaintiff from "bypass[ing] that forum by suing for damages in district court." *Green*, 981 F.2d at 521. Accordingly, district courts lack subject-matter jurisdiction over *Bivens* claims "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." *Id.* Indeed, this doctrine also bars *Bivens* claims arising from agency action short of a "final order," where they "might affect the future adjudicative power of the circuit court." *George Kabeller, Inc. v. Busey*, 999 F.2d 1417, 1422 (11th Cir. 1993); *see also Doe*, 432 F.3d at 1263 ("'[T]o uphold the District Court's jurisdiction in these circumstances would be inimical to the structure and purpose' of the statutory scheme.") (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216 (1994)).

Here, the court lacks subject matter jurisdiction to review the FAA's decision to revoke ExecJet's air carrier certification. The court also lacks subject matter jurisdiction to review the FAA's decisions leading up to the ultimate revocation. Eleventh Circuit case law governs the analysis.

In *Green v. Brantley*, the FAA terminated the plaintiff's Designated Pilot Examiner ("DPE") certificate. *See* 981 F.2d 514, 519–21 (11th Cir. 1993). The *Green* plaintiff filed a *Bivens* action against the FAA officials alleged to be responsible for this decision. In concluding that the district court lacked subject matter jurisdiction to adjudicate this matter, the Eleventh Circuit explained that:

> Where Congress has provided in the courts of appeals an exclusive forum for the correction of procedural and substantive errors, a plaintiff may not bypass that forum by suing for damages in district court . . . The merits of Green's *Bivens* claims are inescapably intertwined with a review of the procedures and merits surrounding the FAA's order [terminating Green's DPE designation]. [The Act] mandates review by the court of appeals. Hence Green's suit for damages constitutes an impermissible collateral challenge to the agency order, and the district court lacks subject matter jurisdiction.

981 F.2d at 521. Following *Green,* this court should rule that it lacks subject matter jurisdiction to review the FAA's decision to revoke ExecJet's air carrier certificate.

7

In addition, the court also lacks subject matter jurisdiction to review the decisions of the FAA inspectors that preceded the certificate revocation. Those decisions are intertwined with the revocation order and might affect the future adjudicative power of the Ninth Circuit, where the appeal currently lies. Plaintiffs' claims here are virtually identical to those that the Eleventh Circuit rejected in *Baltimore Air Transport, Inc. v. Jackson*, 419 F. App'x 932 (11th Cir. 2011). In *Jackson,* plaintiffs sued officials of the FAA in their individual capacities for allegedly depriving them of their due process and equal protection rights. In *Jackson,* plaintiff alleged that inspectors from the Atlanta FSDO, among other things, improperly forced plaintiffs to move their headquarters and refused to conduct check rides of plaintiffs' pilots, ultimately resulting in lost business and the surrender of plaintiffs' air carrier certificate. *Id.* at 935. The Eleventh Circuit found that the district court lacked subject matter over the claims. *Id.* It explained that because plaintiffs' "*Bivens* claims were intertwined with a review of the procedures and merits surrounding the FAA's orders, they were an impermissible collateral challenge, and the district court lacked subject matter jurisdiction over them. *Id.* (quoting *Green*, 981 F.2d at 521).

The Eleventh Circuit in *Jackson* also held that the district court lacked jurisdiction over plaintiffs' claims that FAA employees arbitrarily and capriciously refused to review, consider, and approve various documentation and requests. *Id.* The court ruled that although the complained-of actions did not constitute "final orders" of the FAA, the district court lacked jurisdiction over them because they were intertwined with the FAA's orders and could impact the future adjudication and review of the Circuit Courts of Appeals. It was all encompassed within the statutory review scheme. *Id.* at 936.

Here, as in *Jackson* and the other cases cited by Defendant, Plaintiffs lodge an impermissible collateral attack on Defendants. The court should reject this transparent attempt

8

to circumvent the procedures set forth by Federal Aviation Act. Indeed, the timing of Plaintiff complaint is illuminating.  Here, Plaintiff Falahati appealed ExecJet's certification revocation order to a National Transportation Safety Board (NTSB) Administrative Law Judge, then to the full NTSB, which both affirmed the revocation decision.  The matter is now on appeal before the Ninth Circuit Court of Appeals, where it remains pending (and where it belongs jurisdictionally).  *See* 49 U.S.C. §44709 (exclusive judicial review of revocation orders are with United States Courts of Appeals).  Defendants attach the orders of the NTSB and Administrative Law Judge as Exhibit F.

As the court will see, on those appeals, in arguing that the FAA's decision to revoke its carrier certification was improper, Plaintiff Falahati made the same arguments that Plaintiffs raise here.   Perhaps fearing that the Ninth Circuit will affirm the NTSB's order, Plaintiffs try to recast the case as *Bivens* claims against the individual Defendants.  Indeed, Plaintiffs filed this lawsuit in July 2014, shortly after the NTSB issued its decision affirming the revocation in April 2014.   But, there is no *Bivens* case here.  The issues fall squarely within the ambit of the FAA's administrative structure, which vests any judicial review exclusively with the United States Courts of Appeals. The district court is without jurisdiction and should dismiss the case.

        **B.**      <u>**"Special Factors" Preclude the Judicial Creation of a *Bivens* Remedy**</u>

Not only should the court dismiss the case because exclusive jurisdiction to review the FAA orders here lies in the Courts of Appeal, the court should also dismiss the case because "special factors" counsel against created a *Bivens* remedy.  *Bivens*, 403 U.S. at 396.  Specifically, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, [courts] have not created additional *Bivens* remedies."  *Schweiker v.*

*Chilicky*, 487 U.S. 412, 423 (1988).  A *Bivens* remedy is precluded under the "special factors" doctrine even where the statutory scheme does not provide complete relief for the alleged injury.  *Id.* at 428–29*; Bush v. Lucas*, 462 U.S. 367, 388–90 (1983); *see also Wells v. Fed. Aviation Admin.*, 755 F.2d 804, 810 (5th Cir. 1985) ("We should never suppose that in providing more effective remedies for some grievances than for others, the Congress intended that those grievants who were left in the second group were really meant to be better off than those in the first.").  A statutory scheme raises the inference that Congress "expected the Judiciary to stay its *Bivens* hand" and "refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins,* 551 U.S. 537, 550, 554 (2007).

As discussed, the Federal Aviation Act confers broad authority on the Secretary of Transportation and the Administrator to promote the safe flight of civil aircraft in air commerce, from which "an elaborate remedial system . . . has been constructed step by step, with careful attention to conflicting policy considerations*." Bush,* 462 U.S. at 388.  Pursuant to this authority, Defendant Egan identified serious maintenance discrepancies with Plaintiffs' aircraft.  As discussed, Plaintiffs "had available to them various administrative arenas in which to assert their claims," *Wells,* 755 F.2d at 810, and ultimately sought to do so once their air carrier certificate was revoked.  The "special factors" doctrine "ensure[s] that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order to seek direct judicial relief." *Id. (*quoting *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir. 1983)).  For this additional reason, the court should dismiss the Amended Complaint for lack of subject matter jurisdiction.

### C. Qualified Immunity Protects All Three Defendants

Although the Court need not reach it, the defense of qualified immunity additionally requires dismissal of the Amended Complaint. The court should dismiss all claims against the Defendants, who are sued in their individual capacities, because qualified immunity bars the claims. Plaintiffs cannot overcome this immunity because they fail to plead sufficient facts in the Amended Complaint that, if taken as true, show that any Defendant violated a clearly established constitutional right.

The Defendants are inspectors employed by the Federal Aviation Administration, which is part of the United States Government. *See* Am. Compl., ¶¶5-7. In this lawsuit, Plaintiffs take issue with the decisions that these inspectors made concerning ExecJet's aircraft, including airworthiness and operational decisions. It cannot be disputed that when they made these decisions, the Defendants performed their discretionary functions; that is, they performed the job functions that the FAA hired them to do. *Id.* Plaintiffs acknowledge as much in their Amended Complaint. *See* Am. Compl., ¶¶5-7, 52 (describing each Defendant as a federal employee carrying out job duties); *Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004) (explaining that a government employee acts within the scope of her discretionary authority when she performs legitimate job-related functions through means that were in her power to use). Because the individual Federal Defendants performed discretionary job functions as employees of the FAA when they made decisions concerning ExecJet and its airplane, the Defendants have qualified immunity shielding them from this lawsuit. *See Siegert v. Gilley,* 500 U.S. 226, 232 (1991) (explaining that government officials performing discretionary government functions have qualified immunity from suit).

Since qualified immunity shields each of the individual Federal Defendants from this lawsuit, the only way that Plaintiffs can avoid dismissal of the case on immunity grounds is by meeting their burden of overcoming each Defendant's qualified immunity. *See Holloman,* 370 F.3d at 1264.[3] Plaintiffs fail to do this because they do not allege facts that make it plausible that the particular Defendant's act or omission violated a constitutional right *and* that the right was clearly established at the time of the alleged violation. *See Harlow v. Fitzgerald,* 457 U.S. 800 (1982). A right is clearly established only when, at the time the violation occurred, it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted. *See Gray ex rel. Alexander v. Bostic,* 458 F.3d 1295, 1306 (11th Cir. 2006).

Here, Plaintiffs fail to establish any constitutional violation, much less one clearly established.  To the extent that Plaintiffs claim the Defendants' actions deprived them of the "approvals and certifications essential to conduct their business," Compl. ¶ 50, the opposite is true: "no constitutional right is implicated by a complaint that asserts a property interest in maintaining a business or earning a profit." *Baltimore Air Transp.,* 419 F. App'x at 937 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999)).

Moreover, "[t]he Supreme Court has consistently held that government officials do not violate procedural due process when they deprive an individual of property, so long as a meaningful post-deprivation remedy was available." *Zephyr Aviation, LLC v. Dailey,* 247 F.3d 565, 574 (5th Cir. 2001) (citing *Hudson v. Palmer,* 468 U.S. 517, 533 (1984)).  In *Zephyr,* plaintiffs filed a *Bivens* complaint against two employees of the FAA who had placed a "condition notice" on one of its aircraft (essentially advising that it was unairworthy pending remedial action), alleging that they had "conspired to deprive the company of property – the

airworthiness certificate for the Jet – without due process of law."[4]  *Id.* at 568–69.  The court, assuming that the airworthiness of aircraft could constitute a deprivation of property, held that "the availability of the FAA's appeal structure to remedy that deprivation after the fact provided sufficient process to protect Zephyr's procedural due process rights."  *Id.* at 574.  For the same reasons, Plaintiffs demonstrate no violation of procedural due process in the case at bar.

Similarly, Plaintiffs have not alleged facts sufficient to demonstrate a violation of substantive due process, which requires a governmental deprivation "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998).  While riddled with allegations that the Defendants were wrong about the airworthiness of the aircraft and failed to accept documentation provided by Plaintiffs, the Complaint is devoid of any allegations to support the conclusory allegation that their conduct was "intentional and hostile."  *See* Am. Compl. ¶50.  Even if Defendants' conclusions were ultimately incorrect, "[t]he Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the decision is made.  Mere failure to make the 'correct' administrative decision does not rise to the level of a constitutional violation."  *Atorie Air, Inc. v. Fed. Aviation Admin.*, 942 F.2d 954, 958 (5th Cir. 1991) (quoting *Bass v. U.S. Dep't of Agric.,* 737 F.2d 1408, 1415 (5th Cir. 1984)).  No substantive due process violation is adequately pled.

Although summarily stating that "Plaintiffs were singled out for treatment different from that received by similarly situated persons," Am. Compl. ¶51, the Complaint also fails to allege

---

[4]  The *Zephyr* court took care to note that the defendants had failed to argue that the Federal Aviation Act precluded the creation of a *Bivens* remedy, and did not therefore consider the jurisdictional arguments Defendants raise in this case.  247 F.3d at 570 n.5.

facts that would enable the court to determine the class to which Plaintiffs assert membership, much less factual allegations identifying similarly situated entities which have been treated more favorably. *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306–07 (11th Cir. 2009). The Complaint makes "only the barest conclusory assertion" that "[d]iscrepancy issues such as the ones identified by the Defendants in this case are typically resolved in a matter of days . . . ." *Id.*; Am. Compl. ¶ 44. Due to the "complete lack of factual detail regarding the 'similarly situated' requirement," the Complaint fails to state a cognizable equal protection violation. *Id.* Because the Complaint fails to establish a "constitutional right [that] would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 200. In short, the court should dismiss the case based on qualified immunity.

## CONCLUSION

For these reasons, Defendants Tracey Egan, Franz Juran, and Sergio Lopez request that this Court dismiss the Amended Complaint on the ground that the Court lacks subject-matter jurisdiction over this action and, alternatively, because Defendants have qualified immunity and Plaintiffs fail to state a claim sufficient to overcome that immunity.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: */s/ Marlene Rodriguez*
    Marlene Rodriguez (120057)
    Assistant United States Attorney
    99 N.E. 4th Street
    Miami, Florida 33132
    marlene.rodriguez@usdoj.gov
    305.961.9206

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Marlene Rodriguez*
Marlene Rodriguez
Assistant U.S. Attorney
